DATE FILED: April 4, 2018 5:32 PM
FILING ID: D0F51B5C93F90
CASE NUMBER: 2018CV30317

| | |
|---|---|
| DISTRICT COURT, DOUGLAS COUNTY, COLORADO<br>4000 Justice Way<br>Castle Rock, CO 80109<br><br>Plaintiff:<br>**NORMAN DENARDO**<br><br>v.<br><br>Defendant:<br>**APRIA HEALTHCARE, LLC**<br> | |
| Attorney for Plaintiff:<br>Anthony Viorst, Bar No. 18508<br>THE VIORST LAW OFFICES, P.C.<br>950 South Cherry Street, Suite 300<br>Denver, Colorado 80246<br>Telephone: (303) 759-3808 | ▲ COURT USE ONLY ▲<br><br>Case No.:<br><br>Div.: |
| **COMPLAINT AND JURY DEMAND** | |

Comes Now Plaintiff, Norman DeNardo, by and through counsel, Anthony Viorst of the Viorst Law Offices, P.C., and for his Complaint against the above-named Defendant states as follows:

## PARTIES AND JURISDICTION

1.      At all times relevant hereto, Plaintiff, Normand DeNardo ("DeNardo"), was a resident of Colorado, residing at 1144 Rockhurst Drive, Unit 403, Highlands Ranch, Colorado 80129.

2.      At all times relevant Defendant Apria Healthcare, LLC ("Apria"), was a foreign limited liability company, registered and doing business in Colorado.  Among other services, Apria delivers oxygen tanks to residential customers.

3.      Venue is proper in this county pursuant to C.R.C.P. 98 because the tort was committed in this county.

1



## GENERAL ALLEGATIONS

4.      Mr. DeNardo was at his home on December 23, 2017, when he started having trouble breathing. Mr. DeNardo called his neighbor, Joe Azula ("Azula"), because he knew Azula had an extra oxygen tank.

5.      Azula went to Mr. DeNardo's house and saw the poor condition Mr. DeNardo was in and took him immediately to Urgent Care.

6.      Mr. DeNardo was transferred from Urgent Care to Littleton Adventist Hospital ("hospital") due to his difficulty breathing.

7.       At the hospital Mr. DeNardo was diagnosed with extensive pulmonary emboli in his lungs with the right side being worse than the left and heart strain suspected. Mr. DeNardo was treated with a Heparin drip in order to break up his pulmonary emboli.

8.      Mr. DeNardo remained in the hospital for 5 days under supervision while constantly using oxygen.

9.      Mr. DeNardo was discharged from the hospital after 5 days on December 28, 2017 and instructed to utilize oxygen continuously for one to three months.

10.     The hospital discharged Mr. DeNardo to his home with two oxygen tanks.

11.     Mr. DeNardo was instructed at the hospital to call Apria to begin having oxygen tanks delivered to his house, and was told that they would deliver the tanks within twenty to thirty minutes after he called.

12.     Mr. DeNardo arrived home between 2:00 and 3:00 pm after being discharged from the hospital on December 28, 2017. He called Apria immediately when he arrived home and requested delivery and Apria agreed to bring the oxygen tanks over.

13.     Mr. DeNardo called again after about an hour with no delivery.

14.     Mr. DeNardo called two more times and was assured that the oxygen tanks would be delivered between 8:00 and 9:30 pm.

15.     Mr. DeNardo's oxygen began to run out at 9:10 pm and he called his neighbor Azula, and Azula called Apria who informed him that they were not going to be able to deliver the oxygen tanks for at least another hour and half.

2

16.     Azula then drove Mr. DeNardo to the hospital fearing Mr. DeNardo's oxygen was going to run out. Mr. DeNardo's oxygen ran out on his way to the hospital.

17.     Mr. DeNardo was re-admitted into the hospital on December 28, 2017, for difficulty breathing when no new oxygen tanks were delivered by Apria and his oxygen supply from the hospital ran out.

18.     Mr. DeNardo was put immediately onto a constant flow of oxygen and was diagnosed with hypoxemic respiratory failure.

19.     Due to Apria's failure to provide Mr. DeNardo oxygen in a timely manner he was forced to return to the hospital fearing for his life that he was going to suffocate in his own home.

20.     Mr. DeNardo ran out of oxygen on his way by to the hospital on December 28, 2017, due to Apria's failure to provide his oxygen in a timely manner. Mr. DeNardo ran out of oxygen when he was on strict orders from his doctor to consume oxygen continuously for one to three months. This gap in Mr. DeNardo's oxygen supplement therapy caused his respiratory problems to increase exponentially and he was diagnosed with hypoxemic respiratory failure.

21.     When Mr. DeNardo returned to the Hospital on December 28, 2017, he was in worse condition then when he was first admitted on December 23, 2017. During this second admission to the hospital he was admitted directly to the intensive care unit and forced to remain in the hospital for six days on a ventilator until he recovered from his hypoxemic respiratory failure caused by his oxygen level dropping suddenly when he ran out of oxygen.

22.     Mr. DeNardo was released from the hospital on January 2, 2018, and spent the next several weeks slowly weaning himself off the oxygen.

23.     Apria caused serious bodily injury to Mr. DeNardo by failing to deliver his prescribed oxygen in a timely manner.

24.     Mr. DeNardo underwent extensive medical treatment as a result of the complications from running out of oxygen. He also experienced noneconomic damages, in the form of pain and suffering, emotion distress, and loss of quality of life.

## FIRST CLAIM FOR RELIEF
(Negligence)

25.     Plaintiff hereby incorporates all preceding paragraphs by reference as if fully set forth herein.

26.     With respect to delivering oxygen and medical equipment, Apria owed Mr. DeNardo a duty to exercise that degree of care, skill, caution, diligence and foresight exercised by and expected of an oxygen and medical supply delivery company in similar situations.

27.     Apria deviated from that standard, and breached its duty to Mr. DeNardo when it failed to deliver oxygen in a timely manner.

28.     Apria's breach of duty to Mr. DeNardo was the actual and proximate cause of Mr. DeNardo's increased respiratory difficulties and subsequent hypoxemic respiratory failure, which caused extensive economic and noneconomic damages to Mr. DeNardo described more fully above.

WHEREFORE, Plaintiff, Norman DeNardo, prays for judgment against Defendant in an amount to be determined that will fully, adequately and justly compensate him for his severe injuries, past and future medical expenses, permanent impairments, past and future pain, suffering, and loss of enjoyment of life; together with attorney fees, expert witness fees, court costs, pre-judgment and post judgment interest as provided by statute, and for such other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES TRIABLE**

Dated this 4th day of April, 2018.

**THE VIORST LAW OFFICES, P.C.**

*[Original signature on file at Viorst Law Offices, P.C.]*

*/s/ Anthony Viorst*
Anthony Viorst, #18508
ATTORNEYS FOR PLAINTIFF

**Plaintiff's Address**:
1144 Rockhurst Drive, Unit 403
Highlands Ranch, CO  80129